The .opinion of the court was delivered by
Horton, C. J.:
This was an action in the nature of ejectment, to recover the possession of certain real estate situate in Morris county. The second trial was had at the April term, 1881, by the court, a jury being waived by the parties. After hearing the evidence, the court made a general finding in favor of Woolston (plaintiff below), and rendered judgment in his favor, to which judgment Baker jtnd Watkins (defendants below) excepted, and bring the case here. The following facts seem to be conceded: On the 15th day of March, 1865, the real estate was patented by the United States to Alexander C. Stewart. On the 4th day of January, 1872, Stewart and wife conveyed the same by warranty deed to Seth M. Hays, who died prior to December 19, 1874, seized of the real estate, leaving a minor child, Kittie Parker Robbins Hays, as sole legatee, and appointing one John B. Hamilton executor of his will and guardian of said minor child. On December 19, 1874, John B. Hamilton, as said executor and guardian, conveyed the real estate, under the order and direction of the probate court of Morris county, to W. F. Shamleffer, for the sum of $2,500. On October 21, 1872, the First National bank of Council Grove had obtained a *187 judgment in the district court of Morris county against the firm of Hammond & Burkhart as principals, and W. F. Shamleffer as surety, upon an obligation due the bank for $399.55, and costs. On January 7, 1876, transcripts of several judgments previously rendered before justices of the peace against W. F. Shamleffer, and Shamleffer, Armstrong & Co. (of which firm W. F. Shamleffer was a member), amounting in the aggregate to about $1,200, were properly filed in the office of the clerk of the district court of Morris county. These judgments at the date of the filing of the transcripts were assigned to Simcock as president of the First National bank at Council Grove. An order of sale was issued on the judgment rendered in favor of the First National bank against Hammond & Burkhart, and the other judgments referred to and the real estate in question were appraised and sold to the said First National bank for $1,410, and a sheriff’s deed made the purchaser on May 5, 1876. On November 20,1877, the bank made to said Woolston a deed for the land in controversy, and he claims title thereunder. To defeat and void this claim, evidence was introduced on the part of the plaintiffs in error (defendants below) that Watkins had title to the land in controversy under a commissioners’s deed of the date of April 15,1880, issued in accordance with a decree of the United States circuit court for the district of Kansas, made upon the foreclosure of a mortgage upon the land, executed February 1, 1875, by W. F. Shamleffer and wife to William Ottinger, to secure the payment of $1,000; that Shamleffer had arranged the judgment of the bank against the firm of Hammond & Burkhart prior to the execution of this mortgage, but allowed it to remain unsatisfied upon the records for the purpose of allowing the bank to collect it for him from Hammond; that there was an understanding between the bank, Shamleffer and Ottinger, at the time of the execution of the mortgage, on February 1, 1875, that such mortgage was a prior lien to any interest, lien or claim held by the bank on the real estate; that in the latter part of 1875 or in the early part of 1876, Shamleffer conveyed to J. W. Simcock, in trust *188 for the bank, the judgment against Plammond & Burkhart, together with everything he had. As to the other evidence there was a conflict of testimony. On the part of the defendants below, it is claimed that the testimony shows that when Woolston purchased from the bank, he had actual notice that the Ottinger mortgage was considered by the bank as a prior and superior lien to its interest in the land, and that he cannot claim to be an innocent purchaser for value without notice, but is subject to the same equities as the bank would have been had it continued the owner, especially in view of the fact that the deed of conveyance, while a general warranty, had added therein: “except for taxes, judgments and mortgages of record which are in any manner prior liens thereto.” Further, it is claimed that Woolston was a stockholder in the bank, and therefore bound to take notice of the bank’s agreement that the Ottinger mortgage was a prior and superior lien, and was therefore precluded and estopped from setting up want of notice of the existing equities of the mortgagee, or of the purchaser deriving title under the foreclosure. On the part of plaintiff below, evidence was offered tending to show that he was an innocent purchaser for value without notice; that the Ottinger mortgage was a subsequent lien or claim to the judgments held by the bank; that Woolston had the records examined and found the judgment prior and paramount to the mortgage, and so bought the land; that Woolston merely held stock in the bank as collateral security for the repayment of a loan from Huffaker, and was not a member of the corporation, and though present at some of the meetings of stockholders, did not participate in the proceedings, and was not recognized as a member or stockholder in the bank.
1. Liens priority nocentpur-111" Upon the question whether or not Woolston was an innocent purchaser for value without actual notice, it is sufficient SW that this was a question of fact to be disposed of by the trial judge. As no special finding of facts was asked by either party, the general finding of the court finds all the issuable facts against defend *189 ants below; and as to all matters where the evidence is conflicting, we are concluded by the finding.
2' tantstook, when not a SSSation Counsel suggest that Woolston is not an innocent'purchaser, because the circumstances of the transaction were such as to put him on inquiry as to the actual facts. Now the evidence shows that he did make inquiry by an examination of the records, and obtained a certified abstract, and submitted the same to able counsel; therefore we do not perceive that he was negligent, so that any secret or concealed equities should defeat his title. The claim that Woolston was a stockholder in the bank, and therefore bound by the knowledge of the officers of the bank, is untenable, as the court belów, as we have a right to assume, relied upon the evidence offered by the defendant in error, that the grantee of the bank was not a member or stockholder therein, but merely the holder of certain bank stock from Huffaker as collateral to secure the repayment of a loan. Where a person is merely in possession of bank stock as collateral security, and does not participate in the meetings of the stockholders, and is not recognized by the stockholders as a member, he 0 J \ 7 1S nofc su°k a Par^ °* *be corporation as to be bound to have knowledge of the facts in possession of the corporation, or its officers, 1 as officials of such corporation. The unfortunate part of the transaction seems to be, that the mortgagee relied upon the- verbal promise of a bank official to protect his interest as far as he could, made to him at the time the mortgage was taken; and notwithstanding the records showed the judgment a prior lien, he accepted his mortgage, and thereafter permitted the records to continue to show that the bank had a prior and paramount lien, which ultimately ripened into a title and came by purchase to Woolston.
Upon the whole record, we find no material error, and therefore are compelled to affirm the judgment of the district court.
All the Justices concurring.